please the court. Perry Hopman didn't ask Union Pacific Railroad for a stress-free job. What it did request Union Pacific was mitigation of the worst symptoms of two different disabilities he had suffered from war service as a veteran. One, traumatic brain injury caused by a 50 foot being dropped out of a helicopter due to a colleague's error. And second, PTSD from his war service as a combat flight medic. After a week-long jury trial, the jury found that the limitations could be accommodated and that the railroad hadn't proved its affirmative defenses in the case. The district court then disregarded the jury's verdict. Our opening brief set forth the evidence that supported the verdict. In this court, jury verdicts recorded considerable deference. But the railroad's response to our brief was to ignore the record evidence or in some cases make assertions that were actually contrary to the record. But its brief did... But the railroad's alternative ground is not a jury issue, right? Compliance with railroad safety regulations. It was a fact issue here because it did not discreetly involve a regulation that prohibited the accommodation. Well, that's a question of law. Don't think so, Your Honor. That's what they characterized to the district judge as a tripping hazard. In other words, the regulation doesn't outlaw service dogs. But the compliance with the regulation is a question of law as to which the jury verdict is not controlling. That's all the point I'm making. I don't think so, Judge Loken. All right, give me a case that says otherwise. Well, it's the regulation itself that says a tripping or slipping hazard. Interpretation of a federal regulation or statute is a question of law. Just like a contract. It is. And the regulation, if we examine it, the regulation that was submitted to the jury and cited by the railroad in the court below... Give me a case that... I don't want to waste your time arguing. I think you made a mistake in saying that we have to abide by the jury's interpretation of the federal regulation. When the regulation, I think, Judge Loken, the way we would best say it is the regulation implicates a fact issue. We have no trouble with the court reading the regulation to see what it says. Was there a request for a finding of fact on a disputed fact issue that was important? Yes, very important. What's the instruction number? The instruction, Your Honor, and I'll make sure that I read it correctly. No, don't read it. Just give me a number. I'm going to find the answer to the question, Your Honor. Instruction number 15, Your Honor. Submitted 49 CFR 229-1196. Right? And that simply says there shall be no slipping or tripping hazards. It was hotly contested in the case whether the dog would or would not be a tripping or slipping hazard. Sounds to me like the instruction put the Greg question to the jury. It did. It did not ask for a finding that the court considered critical to applying the regulation. The jury answered the question of whether this implication would... Just yes, right? No. All right. Yes or no? The jury answered it no and said the dog was not a slipping or tripping hazard and therefore did not invoke this regulation at all, Judge Malkin. All right. Okay. So the district court, excuse me, the railroad poses as the best defense to the district court's ruling, an argument that the district court or a statement that the district court made in its order. The district court asked this question. Excuse me. The Union Pacific asked this question in its point number one which this court required them to give you. It asked this question. Was the district court correct to hold that EEOC's regulations encompass only benefits and privileges that an employer sponsors, provides, or makes available to employees generally? That question is easily answered no. The regulation... Easily? Yes, Your Honor. Just by the cases you cite? Yes. Which are readily distinguishable? Sure, Your Honor. As Justice Scalia said in one of his last opinions before he died, accommodations are variances. They require neutral rules to yield to the need of accommodations. Accommodations are variations from how an employer treats employees generally. The regulation that formed the jury instructions had nothing in there about the plaintiff having to prove how the railroad treated other people generally or proving that anything was employer sponsored. The ADA doesn't contain such a term. The regulations don't contain such a term except to say that if employers have recreational activities and have social activities, they've got to accommodate their workers there too. But that's in addition to the duty to accommodate for any other term, condition, or privilege of employment. The district court actually correctly charged the jury on both the affirmative defenses and on the issue of whether the accommodation was reasonable. But what the district court did in its Rule 50 order... So if anybody in any industry in the country says to the employer, if I don't get a two-hour lunch hour instead of a one-hour lunch hour, it will aggravate my PTSD and migraines. That has to be accommodated. I think that if I were a defendant in that situation, I'd move for summary judgment because there's no tying of any accommodation to the actual medical condition involved. Well, suppose it can be done like it's done here. When you say here, Your Honor, we're dealing with a record that this jury considered on a hotly contested charge. So you're saying that in my hypothetical, with enough medical support, it goes to the jury. I have never in my 35 years heard of a longer lunch break as being tied to a disability. So I could not venture a guess as to whether some doctor somewhere could claim such a thing. I don't know. But if they can, the benefits of employment subpart to the statute that the regulations right into the statute would apply. I think if I were defending it, I would argue that it is an undue hardship to give employers unlimited lunch breaks. But it would be a jury issue. Could be, I suppose. So now we've exposed the breadth of your argument. I don't think so, because we don't take the position that the long lunch break is a reasonable accommodation or not. We don't take a position on that. I have no clue. I've never seen a case like that. I'd have to worry about applying the standard you're arguing. Right, and we have no trouble sharing with you, Judge Loken, when the standard is removing the kinds of disability-based obstacles this worker faced while on the job. This is not a line very close. This is a line that's a pretty obvious one that wasn't a difficult one for the jury to find here. This is not a stress-free case. This is a case involving traumatic brain injury, PTSD, with serious symptoms on the job, such as thinking, concentrating, interacting with others, anxiety. How does the presence of the canine assist with the essential functions of the job? When you say assist with the essential functions of the job. Enable him to perform them. It enables him to perform them at the same level as his co-workers who don't suffer these limitations. The case was not tried, though, Judge Smith, on essential functions. The railroad and hotline. Isn't that the focus, though, of accommodations, is to make sure that persons can perform and who are otherwise qualified are able to perform the essential functions of their positions? Judge Smith, that's one purpose. For example, a worker on an assembly line who needs a prosthetic to be able to operate the assembly line, he needs an accommodation in order to perform the discrete essential functions listed by the employer. But some employers are able to work on the assembly line, can complete the job's tasks, with limitations, burdens, doing it more slowly, doing it with pain, doing it while throwing up, doing it while suffering wartime flashbacks. Those two are, according to the cases, the 14 cases that we've cited in our brief, that say that that is a benefit and privilege of employment to remove barriers in the workplace that prevent the worker with a disability from competing fairly and having the same level of performance as those who are not held back by disability-related burdens on the job. That's what the cases say. What cases? Not a circuit cases. Well, we think that this court's decision in Peebles v. Potter, which guided the jury instructions, taught the language I just gave you to allow workers the same level of performance as workers who don't have disabilities. The way this court framed it in Peebles v. Potter, it's the breach of the affirmative duty owed by the employer to the worker. It also says to allow that worker the same equal opportunities at work as workers who don't suffer these sorts of limitations on the job that are holding them back. They're not holding them back enough to dissatisfy the employer. Hoffman slogs through the day and manages to satisfy the railroad that he's a good worker, but not without the burdens and limitations that are in the record and cited in our brief. But what the judge did, and I think we pointed this out in our opening brief, is the district judge recast the evidence at trial about the issues he has with thinking, concentration, nausea, pain, TBI, and PTSD. This is what the district court derided in the Rule 50 order in violation of this court's standard of review. She said it was a, quote, claimed right to work without mental or psychological pain. That's not what the evidence was at all. That was reweighing the evidence, which this court takes a dim view of. The railroad then says on page 23 of its brief. But you just said, your argument is a twist of that statement. I think the way I'd say it. It's the same, in order to reach the same level of performance. Yes. So the district court is not posing a question different than what you are. No, Hoffman did not ever claim a work environment that was free of stress or pain. The job itself, it's a railroad worker. It has its own share of issues. Everybody has stress and pain on their job. This is not some amorphous concept that he suffers with. It's not stress. It's nausea. It's flashbacks from war service. How is allowing, how is prohibiting dogs on a freight train for all workers, different than requiring only one hour for lunch in terms of benefits of employment? An hour for lunch, your honor, with all respect, does not protect a worker to be monitoring for the sounds and lights that provoke triggers in PTSD for flashbacks. A lunch room won't do that. A two-hour lunch won't do that. A two-hour lunch will not notice and monitor the auras which migraine headaches have before they occur when there's a vasoconstriction and dilation. The dog sees it. So when does a condition or when does a benefit rise to the level of what you're saying this case presents? Serious, stark limitations suffered by Mr. Hotman on this record. This case, the evidence cannot be squared with an argument. I thought the evidence was really that it's migraine headache related. Despite all of the other conditions you're talking about, I thought the need for the dog was that it can alert to a possible threatened migraine. Yes. The aura, there are issues, vision issues and neurological issues. The dog notices, the patient. All right. So now let's come a little closer to that. Let's say the workplace has a very bright light for all employees. And one of them says it's triggering migraines for me. So now the accommodation, I don't know, what is it, turn off the light for everybody? I don't think so. Not all lights. He was accommodated with a job in the yard. And he said, I don't like that. I'd rather be on the moving train with my dog. There were more lights and sounds in the yard. That's true. But in fact, let me finish the thought about what the dog does for migraines. The dog alerts the patient to take a Maxalt, which is a vasoconstrictor that prevents the migraine from happening. I understand that. So the dog would do that no matter what the environment. So would turning off a bright light. I don't think, I am not an expert in neurology, but I don't think that necessarily turning on and turning off lights are always the trigger for migraines. But what I would point out that I think we've. No, but you would, it makes sense to me that workers, a workforce, would have different neurological reactions to a brightly lit workplace. I don't know, but. And therefore, the argument you're making in this case could well be front and center in that kind of workplace. I think I'll answer your question just by reading the instruction the jury was given about limiting symptoms of people with disabilities. And this instruction was proposed by the defendant, Union Pacific, and read to the jury. That the jury was told that the accommodation is not reasonable if it does not mitigate the symptoms of Perry-Hopman's disability. That's what this jury was told. That's the way this case was. Was the jury asked to decide if the yard man was a reasonable? Yes, and the jury answered no, that that was not a reasonable accommodation. Again, the answer the jury gave was no, and the railroad doesn't take the position that issue was against the great weight of the evidence either. All of the railroad's defensive issues were answered in the negative. All of the questions on liability, question 4A, asked if the accommodation was reasonable. Question 4B answered the question of whether the accommodation went further and allowed him the same privileges and benefits of employment as other workers enjoy who don't have disabilities. And I would say, I see that I'm running out of time, but I would point out that the essential functions argument, Judge Smith, is certainly not preserved in this circuit. It's forfeited. It was not raised in the Rule 50A motion. They told the district court they were not making that argument. They went to the charge conference and let the jury get charged on whether an accommodation effectively mitigated the symptoms of his disability. Not anything to do with essential functions. And the federal regulation defense is also totally unpreserved, Judge Loken. That argument was not made in the 50A motion, and this court's... Well, if it went to the jury, how can it not be preserved? The jury answered negatively. They took the position it was... All right. If we accept your position and reverse, on remand, could the district court determine that the verdict was against the weight of the evidence? No, because the railroad didn't preserve that argument. They chose to cast all of their... I think a timely JAML motion obviously preserves that. But there was no 50A motion. Period. We raised that in our response to their Rule 50B motion. In this circuit, whether it's a fact question or whether it's a law question, it's got to be raised under 50A, otherwise it's forfeited. That's our position. We think they're wrong on the merits of both those arguments, but neither one of them are preserved in this record. It doesn't matter whether it's an alternative basis for appeal or an appeal. A party still has to file a Rule 50A and a 50B motion in order to invoke that ground. Here, they didn't do that at the district court. Had the district court granted a 50B motion, this court would reverse and say that you can't grant a 50B motion if you haven't made a 50A motion. With that, Your Honor, I will reserve my last two minutes if that's okay with the court. Thank you, Mr. Griffin. Ms. Schuster. Thank you, Your Honors. May it please the court, Stephanie Schuster on behalf of Union Pacific. Please start with the Rule 50A motion. Issue. Certainly, Your Honor. A couple of points on that, on the question of preservation. None of these issues have been waived for preclude consideration by this court. In every single case on waiver that the plaintiff cites, the court assessed whether the appellant had preserved an issue it had raised on appeal. An appellee is not held to the same preservation standards on appeal. Why would Rule 50A be any different for an appellee? Well, you were the verdict loser, your client. Correct. So you have to make the 50A. And you made a JML motion, what, at the close of the evidence? Correct. But not after the verdict? We made a 50A motion that was on the benefits and privileges argument, the argument that the district court ruled on, on the renewed 50B motion. The preservation arguments that the plaintiff makes concern the two alternative grounds for affirmance that we raised, not the ground that the district court ruled on. That's the safety issue as well as the proper interpretation of otherwise qualified individual under the statute. And it's well settled in this circuit that the court may affirm on any ground supported by the record, whether raised below, tried below, or even mentioned below. As long as the record supports it, and these are pure questions of law that we're raising, the court may affirm on that ground. But we think in the first instance that the district court got it right. The accommodation plaintiff seeks, though, is profoundly dangerous. Train cabs, the floors of train cabs must be kept clear so conductors and engineers can react fast and prevent incidents. Yet plaintiff wants his Rottweiler to ride in the cab with him at his feet or by his side. There is no dispute that Union Pacific has steadfastly prohibited employees from bringing animals on board freight trains. And there's no dispute that plaintiff, a high-performing engineer, doesn't need his Rottweiler or any accommodation to do his job. These undisputed facts entitled Union Pacific to judgment as a matter of law in three distinct ways. The first, as the district court ruled, plaintiff wants his Rottweiler on the train to mitigate the symptoms of his disability, symptoms, again, which he concedes he does not need to do his job and which do not affect his work. Instead, plaintiff claims that relief from his symptoms is itself a benefit or privilege. Sounds to me like you're arguing against the verdict. What's that, Your Honor? Sounds to me like you're arguing against the verdict. Well, the verdict that was with the judgment as a matter of law was against the verdict, but not against the evidence. It's a question as a matter of law is what plaintiff said he wanted, a benefit or privilege of employment. And he has not identified anything that could qualify as a benefit or privilege under the EEOC regulation. Benefit or privilege of employment means a benefit or privilege that comes with a job. So you concede the reg applies, even if it adds to the statute? No, we don't, Your Honor. But if the regulation applies, as the district court concluded, then even under that regulation we prevail. But, again, our alternative ground for affirmance is that the regulation is itself invalid insofar as it extends the duty to accommodate beyond enabling employees to perform the essential functions of their jobs. Second, the ADA does not require employers to provide accommodations that would otherwise violate federal law, and that is why Union Pacific never lets employees bring dogs on trains, precisely because- Has it ever been done? Bring dogs on trains? Mm-hmm. There's one instance that was in the record of an employee who brought a support animal, an emotional support animal on a train as soon as Union Pacific found out about it and investigated and put a stop to it. But it's never otherwise- live animals are just not allowed in the cabs because their obstructions are on the floor. And what specific hazard does the presence of the dog create? There's several, but the most obvious to us, Your Honor, is a tripping hazard, right? The regulation prohibits any obstruction that poses a tripping hazard. Courts have determined- And, again, what are these specific hazards created by the dog's presence? That one could trip over it, Your Honor. It's specific that you could trip, and that's what's prohibited by the regulation. Tripping over the dog, huh? That's correct, Your Honor, because- Is that the- I notice you characterized one of their arguments as being a tired argument that rarely prevails. That's sort of a question-begging argument, tired argument. I think that, if memory serves, Your Honor, I don't have my brief in front of me. I think that related to the question that we have to prevail because this is a remedial statute, and so it needs to be- Well, it may have related to a different issue, but it's sort of a question-begging. Well, that's what lawyers are paid to do. Well, Your Honor, so with respect to the tripping hazard, courts have determined that, under that regulation, anything from an air hose- Tripping over a dog, that's- let's see. Oh, okay. Anything from an air hose to a box of bottled water on the cab floor violates the regulation because the train conductor and engineer, the two employees responsible for operating these trains, could trip over it. And if a box of bottled water is a tripping hazard, a rottweiler is a tripping hazard. It is something that's on the floor. It's a risk of harm. It's not a certainty, right? Hazard inherently connotes risk by its ordinary meaning. Regardless of how well- A risk or a realistic risk. Anything the railroad determines is a risk is a risk, and that's the end of the argument. That's why any obstruction that poses a tripping hazard- That's why courts have determined that a loose hose- Do they have to wear special shoes to be an engineer? I'm not familiar with- I'm not certain of the answer. Slip-proof shoes? Well, the regulation at issue requires that the floors have anti-slip measures on, kind of like you tread, that prevent slipping. It's part of the same regulation that we say that the dog would violate. In the same way, again, a box of water, an air hose, any loose material, according to the regulator. That question, we do believe, is a question of law that was not proper for the jury. It is, in fact- I'll digress. Do you remember back, I think it was 1940, Franklin Roosevelt did a pre-war inspection. Of course, he went by train to San Francisco, shipped to Honolulu, shipped to Alaska, shipped down to Seattle. He got a lot of bad press because his little dog, Fowler, had been left behind. There was a big thing. Then a week later, he made a great speech up in New York City. He said, I don't mind if they criticize me, but when they attack my poor little Fowler, that hurts her feelings. I've heard stories of this, Your Honor, yes. But again, this is not- It's irrelevant, but it's a case in 1940. It's not that far back for me. It's not out of lack of compassion or enjoyment of dogs. It's because it poses a safety hazard. The conductor and the engineer, they have to react in an instant. These are the people operating these massive, sometimes mile-long freight trains that are moving through the country. They need to be able to react in an instant. So anything on the floor that could cause them to trip or slow them down. In the interest of full disclosure, I remember when I was living in Aberdeen practicing law, I was able to ride in the diesel engine from Oaks, North Dakota to Columbia, South Dakota, about 30 miles. The track had been laid in 1880. It was probably 60-pound rail, and we went 10 miles an hour. Now, that has nothing to do with the dog, but I just wanted you to know that I've been in a diesel engine, not at 80 miles an hour, but at 10. Certainly, Your Honor. Do passenger trains have the same limitation? As far as that, yes. I believe that passenger trains and the cab- So you can't have a dog on an Amtrak? In the cab. The cab is the compartment of the train where the engineer and the conductor sit, the people who are operating the train. Passenger cars are not encompassed by the regulation, as far as I understand. The cab is itself specially designed. But every freight car is covered? At least the cab, the engineering cab. It's defined, and I believe the Association of American Railroads points this out in its amicus brief, that there's a specific definition of cab, and that's where the conductor and engineer sit. And it gets special focus, again, because these are the two employees charged with ensuring safe operation of this train. They're conducting it. They have to slow it down. They have to make sure that it's run safely. That's why it is so important that the cab floors are kept clear. And that's why Union Pacific had to deny the request for this accommodation. Turning quickly to the otherwise qualified issue, which is another ground on which the judgment may be affirmed, plaintiff's benefits and privileges theory was legally flawed from the get-go because Title I of the ADA does not require accommodations unrelated to job performance. The statute expressly requires employers to provide accommodations for the limitations experienced by otherwise qualified individuals. Applying ordinary rules of statutory construction, an otherwise qualified individual is someone who needs an accommodation to perform the essential functions of the position. And that's taking the statutory definition of qualified individual and modifying it by the ordinary meaning of the word otherwise, which means in all other respects. They're qualified in all respects but for their need for an accommodation. The only other circuit to have addressed the meaning of this language and determined what does the word otherwise mean, the Seventh Circuit, has concluded that only reasonable accommodation claims can only be directed at accommodations necessary to perform essential functions. The other circuits that have endorsed- And what's that case? That was the Brumfeld case as well. There have been more recent ones as well, but Brumfeld was from 2013. The other circuits that have adopted and followed along with the EEOC's broader understanding of reasonable accommodation in the regulation, that also enables employees to enjoy the benefits or privileges of employment that other employees enjoy, have done so without analyzing statutory text and without trying to give meaning to the word otherwise. Those analyses read the word otherwise out of the statute. And this is not to say that on this interpretation a company is free to discriminate, right? It's just the reasonable accommodation rubric does not apply to something unrelated to benefits and privileges of employment. There would just need to be- It's surprising that he's qualified to be an engineer at all. Why is that, Your Honor? Well, with his disabilities. He goes through a fitness for duty exam, and again, it's presumably why he has conceded from the get-go in this case. From the complaint, through discovery at trial, plaintiff made clear he can perform all essential functions of the job without need for an accommodation. He does not need the accommodation to do his job. He wants it to mitigate pain. And mitigating pain, if we're coming back, if we're in the world of this EEOC regulation, if mitigating pain is a benefit or privilege of employment, every accommodation is for a benefit or privilege of employment because every accommodation mitigates the symptoms of a disability. And there is no limiting principle to plaintiff's theory on that case. Well, railroads have never been notably sympathetic to the requirements of its employees, I guess. When did they pass what was then called the Hogg Law? Because engineers used to be known as hoggers in steam engine days. Was it 1912 or 1916 they put in the hours of limitation? I'm not certain, Your Honor. Before that, they could work them until they fell asleep, and then they would fire them, the train crews. So I guess we've progressed since 1912 a bit. Of course. Somewhat. Somewhat. We haven't come quite as far as the plaintiff wants in this case. So unless the court has any further questions, we would just ask that the district courts. Would you address the kind of picklish part of this case to me is the ruling of the jury on what amounts to the legal question of, you know what I'm talking about. I know what you're talking about, Your Honor, yes. Which is at the core of this case. Yes. Instruction 15 asks the jury a straight legal question. Does Union Pacific Railroad, instruction said the defendant has the burden of proving that Mr. Hoffman's requested accommodation was prohibited by the regulation. And then it says which states, and it just gives the regulation. And the jury's answer on that question, question seven. And was there an objection? There was a discussion on the record where the court acknowledged that it was a legal conclusion. And was there an objection? No, it was all understood that this was an advisory jury verdict. And so this is a question, the court answers the question, the jury answers the question that allowing Plaintiff Perry Hoffman. What are the transcript pages that would confirm that? That there was a discussion. That it was understood this was an advisory jury question. Sure, that's at page 660, I believe it's in volume four or five of the transcript, docket 191. Yep, docket 191 at 660. That's where the judge acknowledged it as well. And that's how the parties proceeded. So what's the effect of an advisory decision by the jury? What's the difference between that and the jury making the decision? That the judge doesn't have to follow it. Ultimately a question of law is for the judge to decide. And that's the case, you know, judges can take it. So the effect of it would be the judge wasn't bound by the conclusion. Exactly, Your Honor. That's precisely right. And it was for the judge post-trial to determine whether that verdict would stand or whether she disagreed with the jury's legal conclusion. Which is why when we made our Rule 50B motion, we also made a motion under Rule 39 and 52, which was seeking a conclusion of law under Rule 52 on that jury question. And the only question the jury answered in Question 7 was whether the requested accommodation would be prohibited by a federal law or regulation. And the jury said no. There were no other facts decided by the jury. And honestly, the fact... Was there any discussion of whether there was a disputed fact where a finding would be helpful to the court? Well... Or was it just up and down on what does the reg mean? That was what the question posed to the jury was just up and down. I understand, but now you've cited a discussion that I haven't read. Did the discussion include, in my view it should have, whether the jury could be asked to find a disputed fact? No. The discussion reflected the fact that the judge acknowledged that this was a question of affirmative defense, it was a straight legal question, and that it would be advisory. And even the plaintiff acknowledged in the same discussion, in the context of the same discussion, that only the judge can determine whether the jury is legal. Did the judge make such a determination legally? No. The judge did not reach that question. So in the post-trial motion, having found that we were entitled to judgment on the 50B issue, on the benefits and privileges issue, she entered judgment as a matter of law and therefore didn't reach the question of the advisory. So in your view, that's clearly open to remand or to us if we agree with the plaintiff on the other issue. Yes, Your Honor. We think it's absolutely open. And we think that the facts that go to that question are undisputed. There was nothing for the jury to resolve. The undisputed facts are that Plaintiff wanted to bring a Rottweiler with him in the cab while working on the train and have that Rottweiler at his feet or at his side. And he did for some period of time, correct? What's that? He actually did for some period of time. Plaintiff did not, no. Never did. This plaintiff, no. And the question then poses whether that dog poses a tripping hazard, is an obstruction that creates a tripping hazard under the regulation. That is a pure question of law that the jury did not and should not have considered and is a question for the court that this court can resolve or the lower court could resolve on remand. Unless the court has any further questions, we would respectfully ask that the district court's judgment be affirmed. Thank you. Thank you, Ms. Schuster. Mr. Griffin? Sure. What's undisputed is this tripping hazard defense was not raised in the 50A motion at all. It wasn't raised. It wasn't objected to, submitting it as a fact issue. In what case? The counsel says in those cases which I'm familiar because I was a law clerk at the time that rule came down 50 years ago. What case applies it to appellees? Your Honor, I'm unable to find any exception in Rule 50A when there's an alternative basis for affirmance, but I have found a very helpful case. I think that it's out of circuit, I grant you, but Hanover American Insurance Company v. Tattooed Millionaire. I've always wanted to say that. 974-767 points out that Is that F-3rd, F-4th? F-3rd, yes, Your Honor. Can I say it again? Sure. Let me find my Hanover page here. It is 974-F-3rd-767. It just says if it's an alternative basis. The court? Sixth Circuit. Yes, Sixth Circuit, Your Honor. Make sure I said that right. Yes, Sixth Circuit, Your Honor. And I want the court to understand the question that was asked to the jury before I sit down. The railroad asserts the affirmative defense of violation of federal law or regulation. The railroad has the burden of proving that Mr. Hopman's requested accommodation would be prohibited by 49 CFR 229.119C, which states that the floors of cabs, passageways, and compartments shall be kept free from oil, water, waste, or any other obstruction that creates a slipping, tripping, or fire hazard. That issue was hotly litigated. Most of the evidence said the dog would be in a place where he wouldn't even be in the way. So the jury had a right to answer that question, no. But in any event, the defense had an obligation to raise it in a 50A motion. Otherwise, this court uses the word estopped or forfeited. The district court cannot rule on it because it wasn't ruled in a 50A motion. This court's not supposed to rule on it because it wasn't raised in both a 50A and a 50B motion. So at the end of the day, we come back to where we started. Our view is that the jury's verdict here is entitled to the substantial deference this court affords to jury verdicts. They lost on all of the jury questions. They lost on all of their affirmative defenses after getting the exact defenses they wanted, and the jury was instructed precisely as they asked. We therefore respectfully ask… We agree with the Seventh Circuit that the reg extends the statute improperly. Jury verdict doesn't affect that, does it? That argument's not preserved on essential functions because Brumfield was not cited in the court below at all until they got to this. It doesn't matter. Perhaps not, but what does matter is they didn't move under 50A on their argument that an accommodation is not available if the worker is able to perform somehow the essential functions of the job. You're doing a great job of telling us why we can't decide this case. It is not persuading me. Every issue I've raised is not preserved. It's way of the jury verdict decides it. Not point one, which I encourage the court to review their question one in their brief, which says that unless the plaintiff shows its offer to others generally and unless the plaintiff shows that the employer sponsors the particular activity involved, that's the argument they preserve. That's where we spent our time on our brief. If the reg improperly says the statute goes there, then we can decide. I'm not quite following that question, Judge Logan. You're back to assuming the reg is valid, and therefore the question you present has an easy answer. We don't assume that.  on this regulation without objection. They didn't make an objection and say, oh, you're missing an element. They don't have to make legal arguments. They have to make objections to preserve error in the charge conference. Not if the jury is improperly asked a legal question. Even if they're improperly asked a legal question. Give me the Supreme Court case you're relying on for this exchange. Our best Supreme Court cases, Your Honor, are Barnett v. U.S. Airways and Judge Scalia's opinion in a non-ADA case but an accommodation case in Abercrombie and Fitch, which are both cited in our briefs, and this court's decision in Peebles v. Potter. This case with faithfully that case and this court's model jury instructions formed the instructions in this case. Some instructions were asked for by the defense and they got them. There was nothing objected to in this charge. There was no Rule 50A motion on their second two points on appeal. The only one that's preserved is on the first one, and in the first one it's not in the statute, it's not supported by the cases. And so I think what I'd say is that we rely on the many cases we cited in our brief that say that working free of disability limitations at work is in fact for opportunities, privileges of employment that people without disabilities don't suffer. So we think the verdict's on solid ground and ought not to be disturbed. Thank you, Mr. Griffin. Thank you, Judge. Thank you also, Ms. Schuster. The court appreciates both counsel's participation and argument before the court. We found it helpful and we will take the case under advisement. Counsel may be excused. Madam Clerk, would you call case number two for the morning, please? 21-3839 Western Missouri, United States v. James Workman.